UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA
EASTERN DIVISION

| | |
|---|---|
| **Timothy Shannon**, individually and on behalf of all others similarly situated,<br><br>                      Plaintiffs,<br><br>v.<br><br>**Tomorrow Energy Corp.**;<br>**King Ashton Marketing Services, LLC**;<br>**Kendra King**;<br>**Nicholas Ashton**;<br>**Paul Keene**; and<br>**John Doe Corporations I-XX**,<br><br>                      Defendants. | No. 2:22-cv-204<br><br>**COLLECTIVE AND CLASS ACTION COMPLAINT**<br><br>**(Jury Demand Endorsed Hereon)** |

Plaintiff, Timothy Shannon ("Plaintiff"), sues the Defendants, Tomorrow Energy Corp.; King Ashton Marketing Services, LLC; Kendra King; Nicholas Ashton; and Paul Keene (collectively "Defendants") and alleges as follows:

**PRELIMINARY STATEMENT**

1.     This is an action for unpaid wages, liquidated damages, attorneys' fees, costs, and interest under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq.; 43 Pennsylvania Statutes ("P.S.") § 333.101, et seq.; and Ohio Revised Code Ann. ("ORC") § 4111 for Defendants' failure to pay Plaintiff all earned minimum and overtime wages.

2.     The FLSA was enacted "to protect all covered workers from substandard wages and oppressive working hours." Barrentine v. Ark Best Freight Sys. Inc., 450 U.S. 728, 739 (1981).  Under the FLSA, employers must pay all non-exempt employees a minimum wage of pay for all time spent working during their regular 40-hour workweeks.  See 29 U.S.C. § 206(a).

-1-

Under the FLSA, employers must pay all non-exempt employees one and one-half their regular rate of pay for all hours worked in excess of 40 hours in a workweek.  See 29 U.S.C § 207.

3.      43 P.S. § 333.101, et seq. establishes the law retarding minimum wage and overtime within the state of Pennsylvania.

4.      ORC § 4111, et seq. establishes the law retarding minimum wage and overtime within the state of Ohio.

5.      Plaintiff brings this action on behalf of himself and all similarly-situated current and former employees of Defendants who were sales agents classified by Defendants as independent contractors.

6.      Plaintiff brings a collective action under the FLSA to recover the unpaid minimum wages and overtime owed to them individually and on behalf of all other similarly-situated employees, current and former, of Defendants.  Members of the Collective Action are referred to as the "Collective Members."

7.      Additionally, Defendants' failure to compensate Plaintiff and all other similarly-situated employees at a rate equal to Pennsylvania's required minimum wage and overtime rates violates 43 P.S. § 333.101, et seq.  Plaintiff, therefore, brings a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure to recover unpaid wages and other damages owed under Pennsylvania wage laws.  Members of the Rule 23 Pennsylvania Class Action are referred to as the "Pennsylvania Class Action Members."

8.      Additionally, Defendants' failure to compensate Plaintiff and all other similarly-situated employees at a rate equal to Ohio's required minimum wage and overtime rates violates ORC § 4111, et seq.  Plaintiff, therefore, brings a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure to recover unpaid wages and other damages owed under Ohio wage

laws.  Members of the Rule 23 Ohio Class Action are referred to as the "Ohio Class Action Members."

9.     Members of both the Rule 23 Pennsylvania Class Action and the Rule 23 Ohio Class Action are collectively referred to as the "Class Action Members."

10.     The Collective Members are all current and former employees who worked as sales agents for Defendants and were classified as independent contractors at any time starting three years before this Complaint was filed, up to the present.

11.     The Pennsylvania Class Action Members are all current and former employees who worked as sales agents for Defendants in the State of Pennsylvania and were classified as independent contractors at any time starting three years before this Complaint was filed, up to the present.

12.     The Ohio Class Action Members are all current and former employees who worked as sales agents for Defendants in the State of Ohio and were classified as independent contractors at any time starting three years before this Complaint was filed, up to the present.

13.     Defendants own and operate an enterprisethat sells energy contracts to their customers and potential customers.

14.     At all relevant times, Defendants have operated pursuant to a policy and practice of intentionally misclassifying Plaintiff and all other similarly-situated employees as independent contractors not subject to the FLSA's overtime and minimum wage provisions.

15.     At all relevant times, pursuant to this misclassification, Defendants have willfully refused to pay a minimum wage and willfully refuse to pay overtime.

16.     In willfully refusing to pay a minimum wage and willfully refusing to pay overtime, Defendants have violated the minimum wage provisions of 29 U.S.C. § 206 and the overtime provisions of 29 U.S.C. § 207.

17.     In willfully refusing to pay a minimum wage and willfully refusing to pay overtime, Defendants have violated the minimum wage and overtime provisions of 43 P.S. 333.101, et seq.

18.     In willfully refusing to pay a minimum wage and willfully refusing to pay overtime, Defendants have violated the minimum wage and overtime provisions of ORC § 4111, et seq.

## JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 201, *et seq*. because this civil action arises under the Constitution and law of the United States.  This Court also has subject matter jurisdiction pursuant 28 U.S.C. § 1367 because the state law claims asserted herein are so related to claims in this action over which this Court has subject matter jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

20.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(ii) because acts giving rise to the claims of Plaintiff occurred within the Western District of Pennsylvania, and Defendants regularly conduct business in and have engaged in the wrongful conduct alleged herein – and, thus, are subject to personal jurisdiction in – this judicial district.

## PARTIES

21.     At all material times, Plaintiff is an individual residing in Mercer County, PA, and is a former employee of Defendants.

22.     At all material times, and on information and belief, Defendant Tomorrow Energy Corp. is a Delaware corporation licensed to transact business in the State of Pennsylvania.  At all material times, Defendant Tomorrow Energy Corp. does business, has offices, and/or maintains agents for the transaction of its customary business in Mercer County, Pennsylvania.

23.     At all material times, Defendant Tomorrow Energy Corp. does and/or did business as "Tomorrow Energy."

24.     At all relevant times, Defendant Tomorrow Energy Corp. was an employer under the FLSA.  The FLSA defines "employer" as any person who acts directly or indirectly in the interest of an employer in relation to an employee.  At all relevant times, Defendant Tomorrow Energy Corp. had the authority to hire and fire employees, supervised and controlled work schedules or the conditions of employment, determined the rate and method of payment, and maintained employment records in connection with Plaintiff's employment with Defendants.  As a person who acted in the interest of Defendants in relation to the company's employees, Defendant Tomorrow Energy Corp. is subject to liability under the FLSA. The decision to misclassify Plaintiff, the Collective Members, and the Class Action Members as independent contractors and thereby circumvent the minimum and overtime wage requirements of the FLSA and Pennsylvania law was made and/or approved by Defendant Tomorrow Energy Corp.

25.     At all material times, Defendant King Ashton Marketing Services, LLC is a Pennsylvania limited liability company licensed to transact business in the State of Pennsylvania. At all material times, Defendant King Ashton Marketing Services, LLC does business, has offices, and/or maintains agents for the transaction of its customary business in Mercer County, Pennsylvania.

26.     At all material times, Defendant King Ashton Marketing Services, LLC does business as "King Ashton."

27.     At all relevant times, Defendant King Ashton Marketing Services, LLC was an employer under the FLSA.  The FLSA defines "employer" as any person who acts directly or indirectly in the interest of an employer in relation to an employee.  At all relevant times, Defendant King Ashton Marketing Services, LLC had the authority to hire and fire employees, supervised and controlled work schedules or the conditions of employment, determined the rate and method of payment, and maintained employment records in connection with Plaintiff's employment with Defendants.  As a person who acted in the interest of Defendants in relation to the company's employees, Defendant King Ashton Marketing Services, LLC is subject to liability under the FLSA. The decision to misclassify Plaintiff, the Collective Members, and the Class Action Members as independent contractors and thereby circumvent the minimum and overtime wage requirements of the FLSA and Pennsylvania law was made and/or approved by Defendant King Ashton Marketing Services, LLC.

28.     On information and belief, Defendants John Doe Corporations I-XX are and/or were, at all relevant times, individuals, groups, partnerships, and/or other entities which: (1) may have been working with Defendant King Ashton Marketing Services, LLC to provide energy contracts; (2) may have hired individuals, including the Collective and Class Action Members to sell energy credits to customers; (3) may have been involved in Plaintiff's and the Collective and Class Action Members' damages; and/or (4) are otherwise proper parties to this lawsuit.  The identities of Defendants John Doe Corporations I-XX remain unknown despite Plaintiff's due diligence.

29.     On information and belief, Defendants John Doe Corporations I-XX do business as "Tomorrow Energy."

30.     Defendant Kendra King is an owner of King Ashton Marketing Services, LLC and was at all relevant times Plaintiff's employer as defined by the FLSA, 29 U.S.C. § 203(d).

31.     Under the FLSA, Defendant Kendra King is an employer.  The FLSA defines "employer" as any person who acts directly or indirectly in the interest of an employer in relation to an employee.  Defendant Kendra King is an owner of King Ashton Marketing Services, LLC. At all relevant times, Defendant Kendra King had the authority to hire and fire employees, supervised and controlled work schedules or the conditions of employment, determined the rate and method of payment, and maintained employment records in connection with Plaintiff's employment with Defendants.  As a person who acted in the interest of Defendants in relation to the company's employees, Defendant Kendra King is subject to individual liability under the FLSA. The decision to misclassify Plaintiff, the Collective Members and the Class Action Members as independent contractors and thereby circumvent the minimum and overtime wage requirements of the FLSA and Pennsylvania law was made and/or approved by Defendant Kendra King.

32.     Defendant Nicholas Ashton is an owner of King Ashton Marketing Services, LLC and was at all relevant times Plaintiff's employer as defined by the FLSA, 29 U.S.C. § 203(d).

33.     Under the FLSA, Defendant Nicholas Ashton is an employer.  The FLSA defines "employer" as any person who acts directly or indirectly in the interest of an employer in relation to an employee.  Defendant Nicholas Ashton is an owner of King Ashton Marketing Services, LLC.  At all relevant times, Defendant Nicholas Ashton had the authority to hire and fire employees, supervised and controlled work schedules or the conditions of employment,

determined the rate and method of payment, and maintained employment records in connection with Plaintiff's employment with Defendants.  As a person who acted in the interest of Defendants in relation to the company's employees, Defendant Nicholas Ashton is subject to individual liability under the FLSA. The decision to misclassify Plaintiff, the Collective Members and the Class Action Members as independent contractors and thereby circumvent the minimum and overtime wage requirements of the FLSA and Pennsylvania law was made and/or approved by Defendant Nicholas Ashton.

34.     On information and belief, Defendant Paul Keene is an owner of Tomorrow Energy Corp. and was at all relevant times Plaintiff's employer as defined by the FLSA, 29 U.S.C. § 203(d).

35.     On information and belief, under the FLSA, Defendant Paul Keene is an employer.  The FLSA defines "employer" as any person who acts directly or indirectly in the interest of an employer in relation to an employee.  Defendant Paul Keene is an owner of Tomorrow Energy Corp.  At all relevant times, Defendant Paul Keene had the authority to hire and fire employees, supervised and controlled work schedules or the conditions of employment, determined the rate and method of payment, and maintained employment records in connection with Plaintiff's employment with Defendants.  As a person who acted in the interest of Defendants in relation to the company's employees, Defendant Paul Keene is subject to individual liability under the FLSA. The decision to misclassify Plaintiff, the Collective Members and the Class Action Members as independent contractors and thereby circumvent the minimum and overtime wage requirements of the FLSA and Pennsylvania law was made and/or approved by Defendant Paul Keene.

36.     At all material times, Defendants are Plaintiff's "employer" as defined by the FLSA, 29 U.S.C. § 201, *et seq.*

37.     At all material times, Defendants are Plaintiff's "employer" as defined by 43 P.S. § 333.101, et seq.

38.     At all material times, Defendants are Plaintiff's "employer" as defined by ORC § 4111, et seq.

39.     At all material times, Defendants have operated as a "single enterprise" within the meaning of Section 203(r)(1) of the FLSA. 29 U.S.C. § 203(r)(1). That is, Defendants perform related activities through unified operation and common control for a common business purpose; namely, the operation of a company selling energy contracts to customers.

40.     At all material times: (1) Defendants were not completely disassociated with respect to the employment of Plaintiff; and (2) Defendants were under common control.  In any event, at all relevant times, all Defendants were joint employers under the FLSA.

41.     Defendants are engaged in related activities, *i.e.* all activities which are necessary to the sales and procurement of energy credits and contracts to customers.

42.     Defendants constitute a unified operation because they have organized the performance of their related activities so that they are an organized business system, which is an economic unit directed to the accomplishment of a common business purpose.

43.     At all material times, Defendants Tomorrow Energy Corp.; King Ashton Marketing Services, LLC; Kendra King; Nicholas Ashton; Paul Keene; and John Doe Corporations I-XX were Plaintiff's, the Collective Members' and the Class Actions Members' "Joint Employer." Two or more distinct entities can exert significant control over the same employee such that they are "joint employers." *E.g. In re Enterprise Rent-A-Car*, 683 F.3d 462,

467 (3d Cir. 2012). Analyzing whether an entity is a "joint employer" for purposes of the FLSA requires looking to several, non-exclusive factors in relation to the alleged employer's: (1) authority to hire and fire the relevant employees; (2) authority to promulgate work rules and assignments and to set the employees' conditions of employment: compensation, benefits, and work schedules, including the rate and method of payment; (3) involvement in day-to-day employee supervision, including employee discipline; and (4) actual control of employee records, such as payroll, insurance, or taxes. The Court may also consider the totality of the circumstances, economic realities, and other information suggesting "significant control," which can be persuasive in conjunction with the enumerated elements of the test. Id. at 470.

44.     At all material times, Defendants Tomorrow Energy Corp.; King Ashton Marketing Services, LLC; Kendra King; Nicholas Ashton; Paul Keene; and John Doe Corporations I-XX had the authority to fire Plaintiff, the Collective Members, and the Class Action Members. Moreover, Plaintiff, the Collective Members, and the Class Action Members were required and expected to abide by the enterprise-wise rules and procedures established jointly by Defendants Tomorrow Energy Corp.; King Ashton Marketing Services, LLC; Kendra King; Nicholas Ashton; Paul Keene; and John Doe Corporations I-XX. The decision to misclassify Plaintiff, the Collective Members, and the Class Actions Members as independent contractors, and thereby circumvent the minimum wage and overtime requirements of the FLSA, Pennsylvania law, and Ohio law was made and/or approved jointly by Defendants Tomorrow Energy Corp.; King Ashton Marketing Services, LLC; Kendra King; Nicholas Ashton; Paul Keene; and John Doe Corporations I-XX. Moreover, the reduction in labor costs and corresponding increase in profits that resulted from misclassifying Plaintiff, the Collective Members, and the Class Action Members as independent contractors were shared by Defendants

Tomorrow Energy Corp.; King Ashton Marketing Services, LLC; Kendra King; Nicholas Ashton; Paul Keene; and John Doe Corporations I-XX.

45.     At all material times, Defendants Tomorrow Energy Corp.; King Ashton Marketing Services, LLC; Kendra King; Nicholas Ashton; Paul Keene; and John Doe Corporations I-XX were Plaintiff's, the Collective Members' and the Class Action Members' "single employer." Single employer/enterprise theory examines whether "separate corporations are not what they appear to be, that in truth they are but divisions or departments of a single enterprise." *Davis v. Abington Mem'l Hosp.*, 817 F. Supp. 2d 556, 564 (E.D. Pa. 2011)  (citing *NLRB v. Deena Artware, Inc.*, 361 U.S. 398, 401 (1960)). The analysis has four elements: (1) the interrelation of operations between the corporations; (2) whether the corporations share common management; (3) whether there was centralized control of labor relations; and (4) whether there existed common ownership or financial control. *Katz v. DNC Servs. Corp.* , No. CV 16-5800, 2018 WL 692164, at *3 (E.D. Pa. Sep. 27, 2019) (citing *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 84 (3d Cir. 2003)).

46.     Defendants Tomorrow Energy Corp.; King Ashton Marketing Services, LLC; Kendra King; Nicholas Ashton; Paul Keene; and John Doe Corporations I-XX work together as a single enterprise in the business of selling and procuring energy credits and contracts. Defendants Tomorrow Energy Corp.; King Ashton Marketing Services, LLC; Kendra King; Nicholas Ashton; Paul Keene; and John Doe Corporations I-XX all share in any profit or loss resulting in the operation of their enterprise. Defendants Tomorrow Energy Corp.; King Ashton Marketing Services, LLC; Kendra King; Nicholas Ashton; Paul Keene; and John Doe Corporations I-XX share management. The decision to misclassify Plaintiff, the Collective Members, and the Class Action Members as independent contractors, and thereby circumvent the

minimum wage and overtime requirements of the FLSA, Pennsylvania law, and Ohio law, was made jointly by Defendants Tomorrow Energy Corp.; King Ashton Marketing Services, LLC; Kendra King; Nicholas Ashton; Paul Keene; and John Doe Corporations I-XX. Moreover, the reduction in labor costs and corresponding increase in profits that resulted from misclassifying Plaintiff, the Collective Action Members, and the Class Actions Members as independent contractors were shared by Defendants Tomorrow Energy Corp.; King Ashton Marketing Services, LLC; Kendra King; Nicholas Ashton; Paul Keene; and John Doe Corporations I-XX.

47.     Plaintiff, in his work for Defendants, was employed by an enterprise engaged in commerce that had annual gross sales of at least $500,000.

48.     At all relevant times, Plaintiff, in his work for Defendants, was engaged in interstate commerce.

49.     Plaintiff, in his work for Defendants, regularly handled goods produced or transported in interstate commerce.

## NATURE OF THE CLAIM

50.     Defendants do business as Tomorrow Energy and sell energy credits and contracts to customers.

51.     Plaintiff was hired by Defendants and worked for Defendants as a sales agent from approximately July 2018 through approximately March 2020.

52.     At all relevant times, in his work for Defendants, Plaintiff worked as a sales agent, walking door to door to sell energy contracts to customers throughout cities in both Pennsylvania and Ohio.

53.     Defendants, in their sole discretion, agreed to compensate Plaintiff solely on a commission basis.   Plaintiff was compensated by Defendants in this manner, regardless of how many hours he worked in a given workweek.

54.     Rather than classify Plaintiff as an employee, Defendants classified him as an independent contractor not subject to the FLSA's minimum wage and overtime provisions.

55.     Plaintiff, in his work for Defendants, worked six days per week.

56.     Plaintiff, in his work for Defendants, worked a minimum of 10 hours per day and often worked 12 or more hours per day.

57.     As a matter of common policy and practice, Defendants misclassify all of their sales agents as independent contractors not subject to the FLSA's overtime and minimum wage provisions.

58.     Consistent with this common policy and practice, Plaintiff and others similarly situated individuals have been intentionally misclassified by Defendants as independent contractors not subject to the FLSA's overtime and minimum wage provisions.

59.     As a result of Defendants' common misclassification policy, Defendants have not paid a minimum wage or overtime pay to Plaintiff and others similarly situated.

60.     Specifically, Defendants misclassified Plaintiff and others similarly situated as independent contractors not subject to the FLSA's overtime and minimum wage provisions and required Plaintiff and others similarly situated to work 40 or more hours per week and did not pay them an hourly wage equal to the applicable minimum wage and did not pay them overtime compensation at a rate of one and one-half times their regular rates.

61.     Pursuant to Defendants' misclassification, Plaintiff and others similarly situated were paid entirely based on commission from the sales they made to customers.   Plaintiff and

others similarly situated were compensated by Defendants in this manner, regardless of how many hours they worked in a given workweek.

62.     Plaintiff and others similarly situated were required to meet at Defendants' office for approximately one hour each day.

63.     After the meeting, Defendants' managers drove Plaintiff and others similarly situated to the areas that they would be working.  Defendants, through their managers and/or agents, decided in which areas Plaintiff and others similarly situated would work.

64.     Plaintiff and others similarly situated were required to wear a uniform and were required to follow a script provided by Defendants in order to try and make sales to customers.

65.     In order to make a sale, Plaintiff and others similarly situated were required to connect the customer with a third-party verification service and promptly leave the customer's premises.

66.     Defendants still retained ultimate authority to accept or reject the customer's agreement.

67.     In addition to making sales door to door for Defendants, Plaintiff and others similarly situated were required to make sales calls on their personal time.

68.     The FLSA applied to Plaintiff and all individuals similarly situated at all times during which they worked for Defendants.  No exceptions or exemptions to the FLSA apply to Plaintiff and those similarly situated.

69.     Upon information and belief, Defendants employed hundreds of sales agents throughout the relevant time period without paying a minimum wage or overtime pay, and while denying them the rights and benefits due an employee.

70.     At all relevant times, Defendants directly or indirectly exercised significant control over the wages, hours, and working conditions of Plaintiff and similarly situated individuals.

71.     At all relevant times, the employment terms, conditions, and policies that applied to Plaintiff were the same as those applied to other putative Collective Members, and Class Action Members who also worked as sales agents for Defendants.

72.     Plaintiff and the putative Collective Members and Class Action Members incurred financial loss, injury, and damage as a result of Defendants' business practice of misclassifying them as exempt employees, failing to pay them a minimum wage and overtime pay.

73.     Because Defendants failed to pay their employees proper wages, the putative Collective Members' and Class Action Members' income consisted solely of the commissions paid on deals that closed.

74.     Closing a sale was not a guarantee of payment.  Because Defendants retained authority to reject customer agreements, other issues could arise after closing a deal that would result in Plaintiff not receiving a commission.

75.     Defendants' misclassification of Plaintiff and other putative Collective Members and Class Action Members as independent contractors was specifically intended to enhance Defendants' profit margins at the expense of the putative Collective Members and Class Action Members as follows: (1) willfully failing to pay sales agents the minimum wage in violation of the FLSA; 43 P.S. § 333.101, et seq.; and ORC § 4111, et seq.; (2) willfully suffering and permitting Plaintiff and the putative Collective Members and Class Action Members to work in excess of 40 hours in a given workweek without paying overtime compensation at a rate of one

and one-half times their regular rates; and (3) adopting and implementing employment policies that violate the FLSA; 43 P.S. § 333.101, et seq.; and ORC § 4111, et seq.

76.     Defendants' misclassification of Plaintiff and those similarly situated was willful.

77.     Defendants knew or should have known that it was improper to classify Plaintiff and the putative Collective Members and Class Action Members as independent contractors.

78.     Workers in the putative Collective and Class cannot "elect" to be treated as employees or independent contractors.  Nor can workers in the putative Collective or Class agree to be paid less than the applicable minimum wage.  Despite this, Defendants unfairly, unlawfully, fraudulently, and unconscionably attempted to coerce workers in the putative Collective and Class to waive their statutory rights and elect to be treated as independent contractors.

79.     Any contract which attempts to have workers in the putative Collective and Class waive, limit, or abridge their statutory rights to be treated as an employee under the FLSA or other applicable wage and hour laws is void, unenforceable, unconscionable, and contrary to public policy.

80.     The determining factor as to whether Plaintiff and those similarly situated are employees or independent contractors under the FLSA is not the workers' elections, subjective intent, or any contract.  Rather, the test for determining whether an individual is an "employee" under the FLSA is the economic reality test.  *See Rutherford Food Corp. v. McComb*, 331 U.S. 722, 727 (1947).  Under the economic reality test, employee status turns on whether the individual is, as a matter of economic reality, in business for herself and truly independent, or, rather, is economically dependent upon finding employment in others.

81.     Under the applicable test, court use the following factors to determine economic dependence and employment status: (1) the degree of control exercised by the alleged employer; (2) the relative investments of the alleged employer and employee; (3) the degree to which the employee's opportunity for profit and loss is determine by the employer; (4) the skill and initiative required in performing the job; (5) the permanency of the relationship; and (6) the degree to which the alleged employee's tasks are integral to the employer's business.

82.     The totality of circumstances surrounding the employment relationship between Defendants and the putative Collective and Class establishes economic dependence by the putative Collective and Class on Defendants and employee status.  Here, Plaintiff and all individuals similarly situated are not in business for themselves and truly independent, but rather are economically dependent upon finding employment in Defendants.  The putative Collective and Class are not engaged in occupations or businesses distinct from that of Defendants.  To the contrary, the putative Collective and Class are the basis for Defendants' business.  Defendants retain pervasive control over the business operation as a whole, and putative Collective and Class.

### Degree of Control Exercised by Defendants

83.     Plaintiff and the other members of the putative Class do not exert control over any meaningful part of Defendants' business operation and do not stand as a separate economic entity from Defendants. Defendants exercise control over all aspects of the working relationship with Plaintiff and the other Collective and Class Action Members.

84.     Plaintiff and the Collective and Class Action Members' economic status is inextricably linked to conditions over which Defendants have complete control, including

without limitation advertising and promotion, business and financial relationships with customers, business and financial relationship with insurers, and customer volume.

85. Defendants exercise the following significant control over the work conditions of Plaintiff and others similarly situated:

      a. Defendants require Plaintiff and putative Collective and Class to work minimum 8 hours per day, often more than 10 hours per day, six days per week;

      b. As a result, Defendants require Plaintiff and putative Collective and Class to routinely work in excess of 60 hours per week;

      c. Defendants require Plaintiff and the putative Collective and Class to wear Defendants' uniform;

      d. Defendants require Plaintiff and the putative Collective and Class to follow a script provided by Defendants;

      e. Defendants pay Plaintiff and the putative Collective and Class only commission based on the sales they made;

      f. Defendants retained ultimate authority to accept or reject a customer's agreement;

      g. Defendants direct Plaintiff and the putative Collective and Classes with respect to which areas to attempt to make sales each day; and

      h. Defendants provided necessary tools and equipment Plaintiff and the putative Collective and Classes have to use.

**Facts Establishing No Skill or Initiative of a Person in Business for Themselves**

86.     Plaintiff, like all members of the putative Collective and Classes, does not exercise the skill and initiative of a person in business for oneself.

87.     Plaintiff and the putative Collective and Classes are not required to have any specialized or unusual skills to perform their jobs.  The skills used in performing sales work are commensurate with those exercised by ordinary people.

88.     Plaintiff and the putative Collective and Classes do not have the opportunity to exercise the business skills and initiative necessary to elevate their status to that of an independent contractor: they own no enterprise, nor do they maintain a separate business structure or facility.

89.     Defendants do not permit Plaintiff and the putative Collective and Classes to hire or subcontract other qualified individuals to provide additional sales work to customers, thereby increasing their revenue, as an independent contractor in business for himself would have the authority to do.

**Facts Establishing Relative Investment**

90.     Plaintiff's and the putative Collective's and Class' relative investment is minor when compared to the investment made by Defendants.

91.     Plaintiff and the putative Collective and Class make no financial investment in Defendants' facilities, advertising, maintenance, staffing, and contractual relationships.  All capital investment and risk belong to Defendants.

92.     Plaintiff's and the putative Collective's and Class' investment is limited to costs of uniforms and other onboarding expenses.  Absent Defendants' investment and provision of the business, the sales agents would not earn anything.

**Facts Establishing Opportunity for Profit and Loss**

93.     Defendants manage all aspects of the business operation, including without limitation attracting investors, establishing business relationships, maintaining the premises, establishing the hours of operation, coordinating advertising, and hiring and controlling of staff. Defendants provide all necessary capital to open and operate the business.

94.     Neither Plaintiff nor the putative Collective and Classes have responsibility for any aspect of Defendants' ongoing business risk.

**<u>Facts Establishing Permanency</u>**

95.     Plaintiff worked for Defendants as a sales agent from approximately July 2018 through approximately March 2020 in Defendants' Pennsylvania and Ohio locations.

**<u>Fact Establishing Members of the Putative Collective and Classes Are an Integral Part of Defendants' Business</u>**

96.     Plaintiff and the putative Collective and Classes are critical to Defendants' success.  Defendants' operation in wholly dependent on the energy services that Plaintiff and the putative Collective and Class sells to customers.

97.     The primary "product" or "good" Defendants are in business to sell consists of energy contracts which are sold to customers by members of the putative Collective and Class.

98.     Members of the putative Collective and Class, like Plaintiff, are economically dependent on Defendants and subject to significant control by Defendants.

**<u>Facts Establishing that Defendants' Acts Were Willful</u>**

99.     All actions and agreements by Defendants described herein were willful and intentional, and they were not the result of mistake or inadvertence.

100.    Defendants were aware that the FLSA applies to their business at all relevant times and that, under the economic realities test applicable to determining employment status

under those laws, Plaintiff and Members of the putative Collective and Classes were misclassified as independent contractors.

101.   Sales agents working under conditions similar to those employed with Defendants have been determined to be employees–not independent contractors–in other FLSA cases.

## INJURY AND DAMAGE

102.   Plaintiff and all Members of the putative Collective and Classes suffered harm, injury, and damages, including financial loss, as a result of Defendants' conduct complained of herein.

103.   Plaintiff and all Members of the putative Collective and Classes were entitled to a minimum wage and overtime pay for their work performed for Defendants.  By failing to pay Plaintiff and the Members of the putative Collective and Class a minimum wage and overtime pay, Defendants injured Plaintiff and the Members of the putative Collective and Class and caused them financial loss, harm, injury, and damage.

## FLSA COLLECTIVE ACTION ALLEGATIONS

104.   Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

105.   Plaintiff brings the FLSA claims in this action as a collective action under 29 U.S.C. § 216(b).

106.   Plaintiff asserts those claims on behalf of himself, and on behalf of all similarly situated sales agents of Defendants, who were not paid all minimum wage and overtime compensation required by the FLSA during the relevant time period as a result of Defendants' compensation policies and practices.

107.     Plaintiff seeks to notify the following individuals of their rights under 29 U.S.C. § 216(b) to join this action by filing in this Court written notice of their consent to join this action:

> **All sales agents (or individuals with other similar job duties or titles) who worked for Defendants and were misclassified as independent contractors at any time during the past three years.**

108.     The FLSA provides for a three-year statute of limitations for causes of action arising out of a willful violation of the Act. 29 U.S.C. § 255.  As alleged above, Plaintiff and similarly situated sales agents' claims arise out of Defendants' willful violations of the FLSA. Accordingly, the Court should require appropriate notice of this action be given to all sales agents employed by Defendants within three years from the filing of this Complaint.

109.     Upon information and belief, Defendants have employed more than five hundred (500) sales agents during the period relevant to this action.

110.     The identities of these individuals, as a group, are known only to Defendants. Because the numerous members of this collective action are unknown to Plaintiff, joinder of each member is not practicable.

111.     Because these similarly situated tipped employees are readily identifiable by Defendants and may be located through their records, they may be readily notified of this action and allowed to opt into it pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their FLSA claims.

112.     Collective adjudication is appropriate in this case because the individuals whom Plaintiff wish to notify of this action have been employed in positions similar to Plaintiff; have performed work similar to Plaintiff; and have been subject to compensation practices similar to those to which Plaintiff have been subjected, including unlawful misclassification as independent

contractors and failure to pay the applicable minimum wage and overtime rates as required by the FLSA.

## PENNSYLVANIA CLASS ACTION ALLEGATIONS

113.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

114.    Plaintiff brings his Pennsylvania wage claims as a Rule 23 class action on behalf of the following Class Action Members:

> **All sales agents (or individuals with other similar job duties or titles) who worked for Defendants in Pennsylvania and were misclassified as independent contractors at any time during the past three years.**

115.    <u>Numerosity</u>.  The number of Pennsylvania Class Action Members is believed to be over two hundred.  This volume makes bringing the claims of each individual Pennsylvania Class Action Member before this Court impracticable.  Likewise, joining each individual Pennsylvania Class Action Member as a plaintiff in this action is impracticable.  Furthermore, the identity of the Pennsylvania Class Action Members will be determined from Defendants' records, as will the compensation paid to each of them.  As such, a class action is a reasonable and practical means of resolving these claims.  To require individual actions would prejudice the Pennsylvania Class Action Members and Defendants.

116.    <u>Typicality</u>.  Plaintiff's Pennsylvania wage claims are typical of the Pennsylvania Class Action Members because like the Pennsylvania Class Action Members, Plaintiff was subject to Defendants' uniform policies and practices and was compensated in the same manner as the other Pennsylvania Class Action Members.  Defendants regularly failed to compensate Plaintiff and the Pennsylvania Class Action Members at least the applicable minimum wage for all hours worked.  Defendants regularly required Plaintiff and the Pennsylvania Class Action

Members to work in excess of 40 hours in a given workweek without paying them overtime. Defendants misclassified Plaintiff and the Pennsylvania Class Action Members as independent contractors.  This was commonly, though not exclusively, done in order to prevent Plaintiff and the Pennsylvania Class Action Members from being paid a minimum wage for all hours worked and overtime for all hours worked in excess of 40 in a given workweek.  As a result, Defendants failed to pay Plaintiff and the Pennsylvania Class Action Members both minimum wage and overtime for all hours worked.

117.     As a result of such policy and practice by Defendants, Defendants violated the minimum and overtime wage provisions of 43 P.S. § 333.101, et seq.

118.     Adequacy.  Plaintiff is a representative party who will fairly and adequately protect the interests of the Pennsylvania Class Action Members because it is in his interest to effectively prosecute the claims in this Complaint in order to obtain the unpaid wages and penalties required under Pennsylvania law.  Plaintiff has retained attorneys who are competent in both class actions and wage and hour litigation.  Plaintiff does not have any interest that may be contrary to or in conflict with the claims of the Pennsylvania Class Action Members he seeks to represent.

119.     Commonality. Common issues of fact and law predominate over any individual questions in this matter.  The common issues of fact include, but are not limited to:

a.     The number of hours worked by Plaintiff and the Pennsylvania Class Action Members;

b.     The amounts paid to Plaintiff and the Pennsylvania Class Action Members;

c.      The degree of control Defendants exerted over Plaintiff and the Pennsylvania Class Action Members;

d.      The relative investments of Defendants and Plaintiff and the Pennsylvania Class Action Members;

e.      The degree to which Plaintiff and the Pennsylvania Class Action Members' opportunity for profit and loss was determined by Defendants;

f.      The skill and initiative required in performing the job;

g.      The permanency of the relationship; and

h.      The degree to which Plaintiff and the Pennsylvania Class Action Members' tasks are integral to Defendants' business.

120.    Common issues of law include, but are not limited to:

a.      Whether Defendants paid all minimum wages due and owing to Plaintiff and the Pennsylvania Class Action Members;

b.      Whether Defendants paid overtime wages due and owing to Plaintiff and the Pennsylvania Class Action Members for all hours worked in excess of 40 in a given workweek;

c.      Whether Defendants improperly misclassified Plaintiff and the Pennsylvania Class Action Members as independent contractors;

d.      Whether Plaintiff and the Pennsylvania Class Action Members are entitled to compensatory damages;

e.      The proper measure of damages sustained by Plaintiff and the Pennsylvania Class Action Members; and

f.      Whether Defendants' actions were "willful."

121.    <u>Superiority</u>.  A class action is superior to other available means for the fair and efficient adjudication of this lawsuit.  Even in the event any of the Pennsylvania Class Action Members could afford to pursue individual litigation against companies the size of Defendants, doing so would unduly burden the system.  Individual litigation would magnify the delay and expense to all parties and burden the court system with duplicative lawsuits.  Prosecution of separate actions by individual Pennsylvania Class Action Members would create the risk of inconsistent or varying judicial results and establish incompatible standards of conduct for Defendants.

122.    A class action, by contrast, presents far fewer management difficulties and affords the benefits of uniform adjudication of the claims, financial economy for the parties, and comprehensive supervision by a single court and Judge.  By concentrating this litigation in one forum, judicial economy and parity among the claims of individual Pennsylvania Class Action Members are promoted.  Additionally, class treatment in this matter will provide for judicial consistency. The identities of the Pennsylvania Class Action Members are readily identifiable from Defendants' records.

123.    This type of case is well-suited for class action treatment because: (1) Defendants' practices, policies, and/or procedures were uniform; (2) the burden is on each Defendant to prove it properly compensated its employees; (3) the burden is on each Defendant to accurately record hours worked by employees; and (4) the burden is on each Defendant to prove it properly imposed the tip credit upon its employees.

124.    Ultimately, a class action is a superior forum to resolve the Pennsylvania state law claims set forth in this Complaint because of the common nucleus of operative facts centered on

the continued failure of Defendants to pay Plaintiff and the Pennsylvania Class Action Members according to applicable laws.

125.   <u>Nature of Notice to be Proposed</u>.  As to the Pennsylvania Rule 23 Class Action Members, it is contemplated that notice would be issued giving putative Pennsylvania Class Action Members an opportunity to opt out of the class if they so desire, *i.e.* an "opt-out notice." Notice of the pendency and resolution of the action can be provided to the Pennsylvania Class Action Members by mail, electronic mail, print, broadcast, internet, and/or multimedia publication.

## OHIO CLASS ACTION ALLEGATIONS

126.   Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

127.   Plaintiff brings his Ohio wage claims as a Rule 23 class action on behalf of the following Class Action Members:

> **All sales agents (or individuals with other similar job duties or titles) who worked for Defendants in Ohio and were misclassified as independent contractors at any time during the past three years.**

128.   <u>Numerosity</u>.  The number of Ohio Class Action Members is believed to be over two hundred.  This volume makes bringing the claims of each individual Ohio Class Action Member before this Court impracticable.  Likewise, joining each individual Ohio Class Action Member as a plaintiff in this action is impracticable.  Furthermore, the identity of the Ohio Class Action Members will be determined from Defendants' records, as will the compensation paid to each of them.  As such, a class action is a reasonable and practical means of resolving these claims.  To require individual actions would prejudice the Ohio Class Action Members and Defendants.

129.   <u>Typicality</u>.  Plaintiff's Ohio wage claims are typical of the Ohio Class Action Members because like the Ohio Class Action Members, Plaintiff was subject to Defendants' uniform policies and practices and was compensated in the same manner as the other Ohio Class Action Members.  Defendants regularly failed to compensate Plaintiff and the Ohio Class Action Members at least the applicable minimum wage for all hours worked.  Defendants regularly required Plaintiff and the Ohio Class Action Members to work in excess of 40 hours in a given workweek without paying them overtime. Defendants misclassified Plaintiff and the Ohio Class Action Members as independent contractors.  This was commonly, though not exclusively, done in order to prevent Plaintiff and the Ohio Class Action Members from being paid a minimum wage for all hours worked and overtime for all hours worked in excess of 40 in a given workweek.  As a result, Defendants failed to pay Plaintiff and the Ohio Class Action Members both minimum wage and overtime for all hours worked.

130.   As a result of such policy and practice by Defendants, Defendants violated the minimum and overtime wage provisions of ORC § 4111, et seq.

131.   <u>Adequacy</u>.  Plaintiff is a representative party who will fairly and adequately protect the interests of the Ohio Class Action Members because it is in his interest to effectively prosecute the claims in this Complaint in order to obtain the unpaid wages and penalties required under Ohio law.  Plaintiff has retained attorneys who are competent in both class actions and wage and hour litigation.  Plaintiff does not have any interest that may be contrary to or in conflict with the claims of the Ohio Class Action Members he seeks to represent.

132.   <u>Commonality</u>. Common issues of fact and law predominate over any individual questions in this matter.  The common issues of fact include, but are not limited to:

i.       The number of hours worked by Plaintiff and the Ohio Class Action Members;

j.       The amounts paid to Plaintiff and the Ohio Class Action Members;

k.      The degree of control Defendants exerted over Plaintiff and the Ohio Class Action Members;

l.       The relative investments of Defendants and Plaintiff and the Ohio Class Action Members;

m.     The degree to which Plaintiff and the Ohio Class Action Members' opportunity for profit and loss was determined by Defendants;

n.      The skill and initiative required in performing the job;

o.      The permanency of the relationship; and

p.      The degree to which Plaintiff and the Ohio Class Action Members' tasks are integral to Defendants' business.

133.    Common issues of law include, but are not limited to:

g.      Whether Defendants paid all minimum wages due and owing to Plaintiff and the Ohio Class Action Members;

h.      Whether Defendants paid overtime wages due and owing to Plaintiff and the Ohio Class Action Members for all hours worked in excess of 40 in a given workweek;

i.       Whether Defendants improperly misclassified Plaintiff and the Ohio Class Action Members as independent contractors;

j.       Whether Plaintiff and the Ohio Class Action Members are entitled to compensatory damages;

k.  The proper measure of damages sustained by Plaintiff and the Ohio Class Action Members; and

l.  Whether Defendants' actions were "willful."

134.  <u>Superiority</u>.  A class action is superior to other available means for the fair and efficient adjudication of this lawsuit.  Even in the event any of the Ohio Class Action Members could afford to pursue individual litigation against companies the size of Defendants, doing so would unduly burden the system.  Individual litigation would magnify the delay and expense to all parties and burden the court system with duplicative lawsuits.  Prosecution of separate actions by individual Ohio Class Action Members would create the risk of inconsistent or varying judicial results and establish incompatible standards of conduct for Defendants.

135.  A class action, by contrast, presents far fewer management difficulties and affords the benefits of uniform adjudication of the claims, financial economy for the parties, and comprehensive supervision by a single court and Judge.  By concentrating this litigation in one forum, judicial economy and parity among the claims of individual Ohio Class Action Members are promoted.  Additionally, class treatment in this matter will provide for judicial consistency. The identities of the Ohio Class Action Members are readily identifiable from Defendants' records.

136.  This type of case is well-suited for class action treatment because: (1) Defendants' practices, policies, and/or procedures were uniform; (2) the burden is on each Defendant to prove it properly compensated its employees; (3) the burden is on each Defendant to accurately record hours worked by employees; and (4) the burden is on each Defendant to prove it properly imposed the tip credit upon its employees.

137.     Ultimately, a class action is a superior forum to resolve the Pennsylvania state law claims set forth in this Complaint because of the common nucleus of operative facts centered on the continued failure of Defendants to pay Plaintiff and the Ohio Class Action Members according to applicable laws.

138.     <u>Nature of Notice to be Proposed</u>.  As to the Ohio Rule 23 Class Action Members, it is contemplated that notice would be issued giving putative Ohio Class Action Members an opportunity to opt out of the class if they so desire, *i.e.* an "opt-out notice."  Notice of the pendency and resolution of the action can be provided to the Ohio Class Action Members by mail, electronic mail, print, broadcast, internet, and/or multimedia publication.

**COUNT ONE: FAIR LABOR STANDARDS ACT
FAILURE TO PAY MINIMUM WAGE**
**(Against All Defendants)**

139.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

140.     Defendants willfully failed or refused to pay Plaintiff and the Collective Members minimum wage for all hours worked in a given workweek throughout the duration of their employment.

141.     As a result, Defendants failed to compensate Plaintiff and the Collective Members at least the applicable minimum wage rate for all hours worked.

142.     Defendants' practice of willfully failing or refusing to pay Plaintiff and the Collective Members at the required minimum wage rate violates the FLSA, 29 U.S.C. § 206(a).

143.     Defendants knew that – or acted with reckless disregard as to whether – their failure to pay Plaintiff and the Collective Members the proper minimum wage rate would violate federal and state law, and Defendants were aware of the FLSA minimum wage requirements

during Plaintiff and the Collective Members employment. As such, Defendants' conduct constitutes a willful violation of the FLSA.

144.    Plaintiff and the Collective Members are therefore entitled to compensation for the unpaid minimum wages at an hourly rate, to be proven at trial, plus an additional equal amount as liquidated damages, together with interest, reasonable attorney's fees, and costs.

**WHEREFORE**, Plaintiff, Timothy Shannon, individually, and on behalf of all sales agents similarly situated, respectfully request that the Court grant relief in Plaintiff's favor, and against Defendants for compensation for unpaid overtime wages, plus an additional equal amount as liquidated damages, prejudgment and post-judgment interest, reasonable attorneys' fees, costs, and disbursements of this action, and any additional relief this Court deems just and proper.

**COUNT TWO: FAIR LABOR STANDARDS ACT
FAILURE TO PAY OVERTIME**
**(Against All Defendants)**

145.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

146.    Defendants willfully failed or refused to pay Plaintiff and the Collective Members the applicable overtime wage for all hours worked in excess of 40 in a given workweek throughout the duration of their employment.

147.    As a result, Defendants failed to compensate Plaintiff and the Collective Members at least the applicable overtime wage rate for all hours worked in excess of 40 in a given workweek.

148.    Defendants' practice of willfully failing or refusing to pay Plaintiff and the Collective Members at the required overtime wage rate violates the FLSA, 29 U.S.C. § 207(a).

149.     Defendants knew that – or acted with reckless disregard as to whether – their failure to pay Plaintiff and the Collective Members the proper overtime rate would violate federal and state law, and Defendants were aware of the FLSA overtime requirements during Plaintiff and the Collective Members' employment. As such, Defendants' conduct constitutes a willful violation of the FLSA.

150.     Plaintiff and the Collective Members are therefore entitled to compensation for the unpaid overtime wages at an hourly rate, to be proven at trial, plus an additional equal amount as liquidated damages, together with interest, reasonable attorney's fees, and costs.

**WHEREFORE**, Plaintiff, Timothy Shannon, individually, and on behalf of all sales agents similarly situated, respectfully request that the Court grant relief in Plaintiff's favor, and against Defendants for compensation for unpaid overtime wages, plus an additional equal amount as liquidated damages, prejudgment and post-judgment interest, reasonable attorneys' fees, costs, and disbursements of this action, and any additional relief this Court deems just and proper.

### COUNT THREE: PENNSYLVANIA MINIMUM WAGE ACT 43 P.S. § 333.101 FAILURE TO PAY MINIMUM WAGE

151.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

152.     Defendants willfully failed or refused to pay Plaintiff and the Pennsylvania Class Action Members minimum wage for all hours worked in a given workweek throughout the duration of their employment.

153.     As a result, Defendants failed to compensate Plaintiff and the Pennsylvania Class Action Members at least the applicable minimum wage rate for all hours worked.

154.     Defendants' practice of willfully failing or refusing to pay Plaintiff and the Pennsylvania Class Action Members at the required minimum wage rate violates the minimum wage provisions of 43 P.S. § 333.101, *et seq*.

155.     Defendants knew that – or acted with reckless disregard as to whether – their failure to pay Plaintiff and the Pennsylvania Class Action Members the proper minimum wage rate would violate federal and state law, and Defendants were aware of the FLSA minimum wage requirements during Plaintiff and the Pennsylvania Class Action Members' employment. As such, Defendants' conduct constitutes a willful violation of the FLSA.

156.     Plaintiff and the Pennsylvania Class Action Members are therefore entitled to compensation for the unpaid minimum wages at an hourly rate, to be proven at trial, plus an additional equal amount as liquidated damages, together with interest, reasonable attorney's fees, and costs.

**WHEREFORE**, Plaintiff, Timothy Shannon, individually, and on behalf of all sales agents similarly situated, respectfully request that the Court grant relief in Plaintiff's favor, and against Defendants for compensation for unpaid minimum wages, plus an additional equal amount as liquidated damages, prejudgment and post-judgment interest, reasonable attorneys' fees, costs, and disbursements of this action, and any additional relief this Court deems just and proper.

## COUNT FOUR: PENNSYLVANIA MINIMUM WAGE ACT 43 P.S. § 333.104(c) FAILURE TO PAY OVERTIME FOR HOURS IN EXCESS OF 40

157.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

158.     Defendants willfully failed or refused to pay Plaintiff and the Pennsylvania Class Action Members the applicable overtime wage for all hours worked in excess of 40 in a given workweek throughout the duration of their employment.

159.     As a result, Defendants failed to compensate Plaintiff and the Pennsylvania Class Action Members at least the applicable overtime wage rate for all hours worked in excess of 40 in a given workweek.

160.     Defendants' practice of willfully failing or refusing to pay Plaintiff and the Pennsylvania Class Action Members at the required overtime wage rate violates 43 P.S. § 333.104(c).

161.     Defendants knew that – or acted with reckless disregard as to whether – their failure to pay Plaintiff and the Pennsylvania Class Action Members the proper overtime rate would violate federal and state law, and Defendants were aware of the FLSA overtime requirements during Plaintiff's and the Pennsylvania Class Action Members' employment. As such, Defendants' conduct constitutes a willful violation of the FLSA.

162.     Plaintiff and the Pennsylvania Class Action Members are therefore entitled to compensation for the unpaid overtime wages at an hourly rate, to be proven at trial, plus an additional equal amount as liquidated damages, together with interest, reasonable attorney's fees, and costs.

**WHEREFORE**, Plaintiff, Timothy Shannon, individually, and on behalf of all sales agents similarly situated, respectfully request that the Court grant relief in Plaintiff's favor, and against Defendants for compensation for unpaid overtime wages, plus an additional equal amount as liquidated damages, prejudgment and post-judgment interest, reasonable attorneys'

fees, costs, and disbursements of this action, and any additional relief this Court deems just and proper.

## COUNT FIVE: OHIO MINIMUM WAGE ACT ORC § 4111, ET SEQ. FAILURE TO PAY MINIMUM WAGE

163.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

164.    Defendants willfully failed or refused to pay Plaintiff and the Ohio Class Action Members minimum wage for all hours worked in a given workweek throughout the duration of their employment.

165.    As a result, Defendants failed to compensate Plaintiff and the Ohio Class Action Members at least the applicable minimum wage rate for all hours worked.

166.    Defendants' practice of willfully failing or refusing to pay Plaintiff and the Ohio Class Action Members at the required minimum wage rate violates the minimum wage provisions of ORC § 4111, *et seq.*

167.    Defendants knew that – or acted with reckless disregard as to whether – their failure to pay Plaintiff and the Ohio Class Action Members the proper minimum wage rate would violate federal and state law, and Defendants were aware of the FLSA minimum wage requirements during Plaintiff and the Ohio Class Action Members' employment. As such, Defendants' conduct constitutes a willful violation of the FLSA.

168.    Plaintiff and the Ohio Class Action Members are therefore entitled to compensation for the unpaid minimum wages at an hourly rate, to be proven at trial, plus an additional equal amount as liquidated damages, together with interest, reasonable attorney's fees, and costs.

**WHEREFORE**, Plaintiff, Timothy Shannon, individually, and on behalf of all sales agents similarly situated, respectfully request that the Court grant relief in Plaintiff's favor, and against Defendants for compensation for unpaid minimum wages, plus an additional equal amount as liquidated damages, prejudgment and post-judgment interest, reasonable attorneys' fees, costs, and disbursements of this action, and any additional relief this Court deems just and proper.

## COUNT SIX: OHIO MINIMUM WAGE ACT ORC § 4111, ET SEQ. FAILURE TO PAY OVERTIME FOR HOURS IN EXCESS OF 40

169.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

170.    Defendants willfully failed or refused to pay Plaintiff and the Ohio Class Action Members the applicable overtime wage for all hours worked in excess of 40 in a given workweek throughout the duration of their employment.

171.    As a result, Defendants failed to compensate Plaintiff and the Ohio Class Action Members at least the applicable overtime wage rate for all hours worked in excess of 40 in a given workweek.

172.    Defendants' practice of willfully failing or refusing to pay Plaintiff and the Ohio Class Action Members at the required overtime wage rate violates ORC § 4111, et seq.

173.    Defendants knew that – or acted with reckless disregard as to whether – their failure to pay Plaintiff and the Ohio Class Action Members the proper overtime rate would violate federal and state law, and Defendants were aware of the FLSA overtime requirements during Plaintiff's and the Ohio Class Action Members' employment. As such, Defendants' conduct constitutes a willful violation of the FLSA.

174.    Plaintiff and the Ohio Class Action Members are therefore entitled to compensation for the unpaid overtime wages at an hourly rate, to be proven at trial, plus an additional equal amount as liquidated damages, together with interest, reasonable attorney's fees, and costs.

**WHEREFORE**, Plaintiff, Timothy Shannon, individually, and on behalf of all sales agents similarly situated, respectfully request that the Court grant relief in Plaintiff's favor, and against Defendants for compensation for unpaid overtime wages, plus an additional equal amount as liquidated damages, prejudgment and post-judgment interest, reasonable attorneys' fees, costs, and disbursements of this action, and any additional relief this Court deems just and proper.

## <u>JURY TRIAL DEMAND</u>

Plaintiff demands a trial by jury on all issues so triable.

RESPECTFULLY SUBMITTED this 3rd day of February, 2022.

THE LAW OFFICES OF SIMON & SIMON

By: /s/ *James L. Simon*
James L. Simon (OH No. 0089483)
5000 Rockside Road
Liberty Plaza Building – Suite 520
Independence, OH 44131
Telephone: (216) 525-8890
Email: james@bswages.com

BENDAU & BENDAU PLLC

By: /s/ *Clifford P. Bendau, II*
Clifford P. Bendau, II (*pro hac vice forthcoming*)
BENDAU & BENDAU PLLC
P.O. Box 97066
Phoenix, Arizona 85060
Telephone AZ: (480) 382-5176
Email: cliff@bswages.com co